1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8
    Gerald Earle Johnson,                    )    No. CIV 06-258-TUC-GEE
9                                            )
                 Plaintiff,                  )    **ORDER**
10                                           )
    vs.                                      )
11                                           )
    Michael J. Astrue, Commissioner of the )
12  Social Security Administration,          )
                                             )
13               Defendant.                  )
                                             )
14  _____)

15

16          The plaintiff filed this action for review of the final decision of the Commissioner for

17  Social Security[1] pursuant to 42 U.S.C. § 405(g).

18          Pending before the court is a motion for summary judgment filed by the plaintiff on

19  November 3, 2006 [doc. #18], and a cross-motion for summary judgment filed by the defendant

    on November 30, 2006.  [doc. # 23]
20
            The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. §
21
    636(c) and FED.R.CIV.P. 73 having received the written consent of both parties.
22
            The court finds the final decision of the Commissioner is not supported by substantial
23
    evidence.  The case will be remanded for further proceedings consistent with this opinion.
24

25

26

27  _____
           [1] The new Commissioner for Social Security, Michael J. Astrue, is substituted for the original
28  defendant, Joanne B. Barnhart, pursuant to FED.R.CIV.P. 25(d)(1).

1    PROCEDURAL HISTORY

2         On September 3, 2003, Johnson filed the instant application for social security disability

3    insurance benefits alleging a disability that began on June 20, 2003, due to "[a]rthritis, left hip

4    problem, explosive temper, [a]lcoholic; numbness in both hands and part of fingers; left knee

5    problems."   (Tr. 122, 139).   His insured status ended on December 31, 2003.   (Tr. 17).

6         The Social Security Administration (SSA) denied his application initially and again upon

7    reconsideration. (Tr. 91-93, 95-98). Johnson requested review and on April 5, 2005, appeared

8    with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon. (Tr. 28-

9    56).   The ALJ found Johnson was not disabled.  (Tr. 16-21).   Johnson appealed the ALJ's

10   decision, but the Appeals Council denied review making the decision of the ALJ the final

11   decision of the Commissioner. (Tr. 5-8); 20 C.F.R. §§ 404.981.

12        Johnson then filed the instant complaint in U.S. District Court appealing the

13   Commissioner's final decision.   He filed the instant motion for summary judgment on

14   November 3, 2006.   He argues the ALJ erred when she (1) rejected the assessment of

15   psychologist, Wayne R. General, Ph. D., (2) adopted the assessment of a non-examining state

16   agency physician, (3) discounted Johnson's subjective testimony of disability, and (4) found

17   Johnson failed to overcome the presumption of continuing non-disability.   The Commissioner

18   filed the instant cross-motion for summary judgment on November 30, 2006.   The

19   Commissioner argues the decision of the ALJ was supported by substantial evidence. Johnson

20   filed a combined response and reply on January 17, 2007.

21

22        Claimant's Work History and Medical History

23        Johnson was born in 1956. (Tr. 122). He finished the 12th grade in school and received

24   additional training in automotive repair. (Tr. 33). Johnson worked as a mechanic for almost

25   fifteen years beginning in 1988. (Tr. 45, 147).

26        On April 28, 1994, Johnson filed a prior application for disability insurance benefits and

27   supplemental security income alleging a disability onset date of March 25, 1994. (Tr. 60-67).

28

1   On August 24, 2000, the Social Security Administration found Johnson was disabled for the
2   closed period from March 25, 1994, through July 1, 1996. *Id.* The ALJ found Johnson had the
3   following severe impairments: "Perthes disease[2], status post total right hip replacement, status
4   post left knee arthroscopy, bilateral cubital tunnel syndrome, depressive reaction, NOS,
5   explosive personality disorder, learning disability for written expression, and a history of
6   episodic alcohol abuse." (Tr. 61). The ALJ concluded Johnson was disabled during the closed
7   period because Johnson "was recovering from hip replacement surgery and was also treated for
8   bilateral cubital tunnel syndrome." (Tr. 63). "Additionally, he was treated for depression and
9   personality disorder during the closed period which did not improve until July 1996 with the use
10  of medications." *Id.* In July of 1996, Johnson returned to work as a self-employed mechanic.
11  (Tr. 64).

12      Johnson worked as a mechanic/repair shop owner until the Summer of 2003 when his
13  last employee quit. (Tr. 37). Johnson found he was unable to continue, and on June 20, 2003,
14  he sold his business and moved to Arizona. (Tr. 45, 147). At the time of the hearing, he was
15  living off the proceeds of that sale. (Tr. 45).

16      On November 3, 2003, Johnson was examined by Wayne General, Ph.D., for the Arizona
17  disability determination service. (Tr. 183-88). Johnson reported he has suffered from
18  depression since childhood. *Id.* He believes his condition is improved by beer. *Id.* He
19  becomes inebriated six days in seven. *Id.* General opined Johnson's ability to relate to others
20  was "fair at best, and possibly poor." *Id.* His prognosis for returning to work was "only in the
21  fair range." *Id.* General diagnosed the following: "Axis I: 303.90 Alcohol Dependence, Not
22  in Remission at this time. 296.89 Bipolar II Disorder, Depressed Type. Axis II: 301.70
23  Antisocial Personality Disorder, from numerous times in jail, by self-report. Axis III: Perthes
24  disease during childhood; orthopedic difficulties at this time." *Id.*

25
26
27
28      [2] Legg-Calve-Perthes Disease is a skeletal disorder of the femoral head usually appearing in
    males between the ages of 5 and 10 years old. The Merck Manual, 2413-14 (17th ed. 1999).

On November 20, 2003, General completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 194-95). He rated Johnson's ability to "follow work rules," "relate to co-workers," "deal with the public," "interact with supervisor(s)," "deal with work stresses," "understand remember & carry out complex job instructions," and "maintain personal appearance," as only "fair (seriously limited but not precluded)." *Id.* (capitalization modified).

In November of 2003, Johnson was given a "physical medicine evaluation" by George M. O'Brien, D.O., for the Arizona disability determination service. (Tr. 189-93). He found Johnson alert, oriented, semi-pleasant, and semi-cooperative. *Id.* He noted Johnson's "mood and responses were inappropriate." *Id.* O'Brien's impression was as follows: "Status post right hip arthroplasty at an early age . . . Mild degenerative joint disease of the left knee . . . Work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, speaking and traveling, I saw no real difficulty. . . ." *Id.* He concluded, "On the basis of the above objective findings, I find the claimant with very little functional limitations." *Id.*

In December of 2003, Francis A. Enos, Ph.D., completed a psychiatric review of the record. (Tr. 88, 196-209). Enos concluded Johnson suffered from organic mental disorder, affective disorder, personality disorder and substance addition disorder which met the social security listings as presumptively disabling. *Id.* He further found Johnson's substance abuse was a material factor in his disability. *Id.*

In May of 2004, Hubert R. Estes, M.D., completed a psychiatric review of the record. (Tr. 210-23). Although Estes found evidence of a mood disorder, personality disorder and substance addition disorder, he concluded Johnson's impairments were not severe because there was no evidence that Johnson's condition had changed after the first ALJ's decision in August of 2000. *Id.*

In May of 2004, Jerry Dodson, M.D., evaluated Johnson's medical record for the disability determination service. (Tr. 224-31). He found Johnson could lift or carry 20 pounds occasionally and 10 pounds frequently. *Id.* Johnson could sit, stand, or walk for about 6 hours in an 8-hour day. *Id.*

1      On April 5, 2005, Johnson appeared at a hearing before Administrative Law Judge (ALJ)

2   Lauren R. Mathon. (Tr. 28). Johnson testified he worked as a car mechanic and owned his own

3   shop. (Tr. 36). When his last employee quit, he discovered he was unable to continue and sold

4   his shop. (Tr. 37). He testified he was unable to continue as a mechanic due to back pain,

5   depression, explosive temper, and numbness in his hands and feet. (Tr. 39).

6

7      CLAIM EVALUATION

8      Social Security Administration (SSA) regulations require that disability claims be

9   evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,*

10  923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the

11  claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the

12  claimant is not disabled and benefits are denied. *Id.* If the claimant is not engaged in

13  substantial gainful activity, the ALJ proceeds to step two which requires a determination of

14  whether the claimant has a medically severe impairment or combination of impairments. 20

15  C.F.R. § 404.1520(a)(4).

16     In making a determination at step two, the ALJ uses medical evidence to consider

17  whether the claimant's impairment more than minimally limits or restricts his or her "physical

18  or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not

19  severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three

20  which requires a determination of whether the impairment meets or equals one of several listed

21  impairments that the Commissioner acknowledges are so severe as to preclude substantial

22  gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the

23  claimant's impairment meets or equals one of the listed impairments, then the claimant is

24  presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449,

25  1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment,

26  evaluation proceeds to the next step.

27

28

1   The fourth step requires the ALJ to consider whether the claimant has sufficient residual
2   functional capacity[3] (RFC) to perform past work.  20 C.F.R. § 404.1520(a)(4).  If the ALJ
3   concludes the claimant has sufficient RFC, then the claim is denied.  *Id.*  If the claimant cannot
4   perform any past work due to a severe impairment, then the ALJ must move to the fifth step
5   which requires consideration of the claimant's RFC to perform other substantial gainful work
6   in the national economy in view of claimant's age, education, and work experience. 20 C.F.R.
7   § 404.1520(a)(4).
8
9   The ALJ's Findings
10   At step one of the disability analysis, the ALJ found Johnson had not engaged in any
11   substantial gainful activity since his alleged onset date.  (Tr. 21).  At step two, she found
12   Johnson had the following impairments: "status post right hip surgery; status post left knee
13   surgery; depression; and explosive personality disorder."  *Id.*  The ALJ determined, however,
14   these impairments were not severe.  Accordingly, the ALJ concluded Johnson was not disabled
15   at any time through his last insured date of December 31, 2003.  *Id.*
16
17   STANDARD OF REVIEW
18   An individual is entitled to disability benefits if he or she demonstrates, through
19   medically acceptable clinical or laboratory standards, an inability to engage in substantial
20   gainful activity due to a physical or mental impairment that can be expected to last for a
21   continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A]
22   claimant will be found disabled only if the impairment is so severe that, considering age,
23   education, and work experience, that person cannot engage in any other kind of substantial
24   gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
25   1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).
26
27
28   [3] Residual functional capacity is defined as that which an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545.

1       To establish a *prima facie* case of disability, the claimant must demonstrate an inability

2   to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

3   Once the claimant meets that burden, the Commissioner must come forward with substantial

4   evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir.

5   1985).

6       The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g),

7   1383(c)(3).  The court may overturn the decision to deny benefits "only if it is not supported by

8   substantial evidence or it is based on legal error." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

9   Cir. 1992) (citations omitted).  The Commissioner's determination that a claimant is not

10  disabled must be upheld if the Commissioner applied the proper legal standards and the record

11  as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d

12  328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988);

13  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)).  Substantial evidence is defined as "such

14  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

15  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen*, 853 F.2d

16  643, 644 (9th Cir. 1987).  The standard is less than a "preponderance of the evidence" standard.

17  *Matney*, 981 F.2d at 1019.

18      "[I]f the evidence can support either outcome, the court may not substitute its judgment

19  for that of the ALJ." *Matney*, 981 F.2d at 1019 (citing *Richardson*, 402 U.S. at 400).  When

20  applying the substantial evidence standard, however, the court should not mechanically accept

21  the Commissioner's findings but should review the record critically and thoroughly. *Day v.*

22  *Weinberger*, 522 F.2d 1154 (9th Cir. 1975).  Reviewing courts must consider the evidence that

23  supports as well as detracts from the Commissioner's conclusion. *Id*. at 1156.  A denial of

24  benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing

25  the evidence even though the findings may be supported by substantial evidence.   *Frost v.*

26  *Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002);  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.

27  1978).

28

1    In evaluating evidence to determine whether a claimant is disabled, the opinion of a

2  treating physician is entitled to great weight. *Ramirez v. Shalala*, 8 F.3d 1449, 1453-54 (9th Cir.

3  1993). The Commissioner may reject a treating physician's uncontradicted opinion only if she

4  sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

5  1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's

6  opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she

7  provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,*

8  81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition

9  and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759,

10  761 n.7 (9th Cir. 1989).

11    "The opinion of an examining physician is, in turn, entitled to greater weight than the

12  opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

13  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the

14  uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,

15  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

16  that are supported by substantial evidence in the record." *Id.* at 830-31.

17    When medical reports are inconclusive, questions of credibility and resolution of

18  conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at

19  751 (citations omitted). The Commissioner's finding that a claimant is less than credible,

20  however, must have some support in the record. *See Light v. Social Security Administration,*

21  119 F.3d 789 (9th Cir. 1997).

22    The ALJ need not accept the claimant's subjective testimony of disability, but if she

23  decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81

24  F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the

25  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

26  *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not

27  credible and what evidence undermines the claimant's complaints." *Id.*

28

1    DISCUSSION

2    The decision of the ALJ is not supported by substantial evidence. Her decision to reject

3    the opinion of Johnson's examining physician[4], Wayne R. General, Ph.D., is not supported by

4    the record.

5    General examined Johnson on November 3, 2003, for the Arizona disability

6    determination service. (Tr. 183-88). He diagnosed Johnson as follows: "Axis I: 303.90 Alcohol

7    Dependence, Not in Remission at this time. 296.89 Bipolar II Disorder, Depressed Type. Axis

8    II: 301.70 Antisocial Personality Disorder, from numerous times in jail, by self-report. Axis III:

9    Perthes disease during childhood; orthopedic difficulties at this time." *Id.* He rated Johnson's

10    ability to "follow work rules," "relate to co-workers," "deal with the public," "interact with

11    supervisor(s)," "deal with work stresses," "understand remember & carry out complex job

12    instructions," and "maintain personal appearance," as only "fair (seriously limited but not

13    precluded)." (Tr. 194-95) (capitalization modified).   Clearly, he believed Johnson had severe

14    mental impairments. *See* 20 C.F.R. § 404.1520(c) (A severe impairment "significantly limits

15    your physical or mental ability to do basic work activities . . . ."); *Smolen v. Chater*, 80 F.3d

16    1273, 1290 (9th Cir. 1996) ("An impairment or combination of impairments can be found 'not

17    severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

18    effect on an individual[']s ability to work.'").

19    The ALJ, however, rejected General's opinion in favor of that of the non-examining state

20    agency physician, Hubert R. Estes, M.D. (Tr. 20, 210-23). General, however, is an examining

21    physician and his opinions should trump the opinions of a non-examining physician unless the

22    ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the

23    record."[5] *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  This, she did not do.

24    _____

25    [4] The term "physician" includes psychologists and other health professionals who are not

26    medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

27    [5] The court assumes without deciding that the contrary opinion of a non-examining physician

28    lowers the Commissioner's burden of persuasion to producing "specific and legitimate" rather than
     "clear and convincing" reasons. *See* (Plaintiff's motion, p. 3, n. 7) (citing a conflict between *Widmark*

- 9 -

In her decision, the ALJ explained her reliance on the State Agency non-examining physician as follows:

> The undersigned has considered the opinion of DDS consultant Wayne R. General, Ph.D., [] and has rejected it as unsupported by the medical evidence of record.  Moreover, the doctor's limitations are too restrictive based on his narrative report, which renders his opinion less persuasive [].

(Tr. 20) (internal citations omitted).  Her argument, however, is not persuasive.

The ALJ objected to General's report because she found it "unsupported by the medical evidence of record."  (Tr. 20).  It is not clear, what supporting medical evidence the ALJ was expecting.  Psychiatric impairments are, by their nature, different from physical ailments.  They are not amenable to objective verification.  *See Poulin v. Bowen*, 817 F.2d 865, 873 (D.C.Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed . . . .").  It is therefore not surprising that General's report lacked the type of supporting objective evidence that is usually present in a case of physical disability.  However, as long as General evaluated Johnson's impairments by employing the standard psychiatric methodology, the ALJ should not discount his opinions because of a perceived lack of objective testing.  *See also Poulin*, 817 F.2d at 874 ("The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.").

Here, General interviewed Johnson and administered a formal mental status examination. (Tr. 183-88).  He based his diagnosis on Johnson's medical, educational, social and work history; his appearance and behavior during the interview; and his performance on the mental status examination.  *Id.*  There is no evidence indicating General did not employ the standard psychiatric methodology in diagnosing Johnson's mental condition.  Accordingly, the ALJ's criticism of his diagnostic technique is unsupported.

---

*v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) and, inter alia, *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984)).

1    The ALJ also complained that "the doctor's limitations are too restrictive based on his

2    narrative report . . . ." (Tr. 20). Unfortunately, she did not elaborate further so it is impossible

3    for the court to properly understand and evaluate this statement.

4         The ALJ failed to give specific and legitimate reasons for crediting the opinion of the

5    state agency non-examining physician over the opinion of Johnson's examining physician.

6    Accordingly, General's opinion as to Johnson's mental impairments should be credited as a

7    matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner

8    fails to provide adequate reasons for rejecting the opinion of a treating or examining physician,

9    we credit that opinion as a matter of law.").

10        The ALJ's determination at step 2 that Johnson has no severe impairments is not

11   supported by substantial evidence.  The case should be remanded with instructions for the

12   Commissioner to accept General's opinion, revise the step 2 determination, and proceed to step

13   3 of the disability analysis.  The court does not reach the claimant's remaining allegations of

14   error.

15        Johnson argues this case should be remanded for benefits because General's opinion and

16   his own subjective testimony prove he is disabled.  General's opinion, however, listed alcohol

17   dependence as a component of his mental condition.  If alcoholism is a "contributing factor

18   material to the . . . determination that the individual is disabled," then the claimant is not eligible

19   for disability insurance benefits.  42 U.S.C. § 423(d)(2)(C).  Even if General's opinion proves

20   Johnson is unable to work, the case still must be remanded for the Commissioner to make a

21   finding as to whether Johnson's alcoholism is a material contributing factor.  The court

22   recognizes the ALJ stated in her decision that Johnson's "history of alcohol abuse is not a

23   material factor contributing to this finding of non-disability at any time." (Tr. 20).  This

24   statement, however, was made after the ALJ discounted General's opinion as to Johnson's

25   mental condition.  General's opinion must be credited – on the issue of disability and on the

26   issue of alcohol dependence. *See also*, *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001)

27   ("[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a

28   contributing factor material to his disability determination.").  Accordingly,

- 11 -

1  |  IT IS ORDERED that the plaintiff's Motion for Summary Judgment is GRANTED [doc.
2  |  #18];

3  |  IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment is
4  |  DENIED. [doc. #23]  This case is remanded to the Commissioner for further proceedings
5  |  consistent with this order.

7  |  DATED this _17th_ day of May, 2007.

10 |  GLENDA E. EDMONDS
   |  United States Magistrate Judge